UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY

| | | |
|---|---|---|
| In Re: | ) | |
| JEFFERY H. BAYES | ) | CASE NO. 25-90845 |
| DEBTOR. | ) | Chapter 13 |
| RABO AGRFINANCE LLC | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. No. _______________ |
| JEFFERY H. BAYES | ) | |
| Defendant. | ) | |

**AMENDED COMPLAINT**

Now comes Rabo AgriFinance LLC ("Plaintiff" or "Rabo"), by and through its undersigned counsel and pursuant to 11 U.S.C. § 523(a)(2)(A) of the United States Bankruptcy Code, hereby objects to the dischargeability of indebtedness owed to Plaintiff by Defendant Jeffery H. Bayes (the "Defendant"). In support thereof, Plaintiff states as follows:

## PRELIMINARY STATEMENT

1. Plaintiff seeks a declaration that its claim is nondischargeable under 11 U.S.C. § 523(a)(2)(A) of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure 4007, based on Defendant's false pretenses and false representations in inducing Plaintiff to extend credit to Defendant.

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff Rabo AgriFinance LLC is a limited liability company organized under the laws of the State of Delaware. Plaintiff is a creditor of the Defendant in this Chapter 13 case.

3. Defendant is a citizen and resident of Lexington, Indiana and is the debtor in the Chapter 13 case to which this adversary proceeding relates.

4. On July 23, 2025 (the "Petition Date"), the Defendant filed with this Court his voluntary petition (the "Petition") for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Case").

5. This Court has jurisdiction and venue over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 1409(a).

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

7. Rabo consents to the bankruptcy court's entry of final orders or judgment in the above-referenced case.

## FACTS

8. Plaintiff is in the business of providing agricultural-based financing to farmers throughout the United States.

9. Upon information and belief, Defendant operates a row crop and produce farming operation based in Lexington, Indiana.

10. On February 8, 2023, the Defendant completed and signed a Credit Application and Account Agreement (the "Application and Agreement") by which Defendant applied for and requested credit advances from Rabo. A true and accurate copy of the Application and Agreement is attached hereto and incorporated herein as **Exhibit A**.

11. The Application and Agreement represented that Defendant had $288,950.00 in short term assets, $327,000.00 in intermediate assets, and $1,600,000.00 in long term assets, with a total of $2,217,950.00 in assets.

12. The Application and Agreement represented that Defendant had $0.00 in short term liabilities, $28,000.00 in intermediate liabilities, and $824,000.00 in long term liabilities, with a total of $852,000.00 in liabilities.

13. The Application and Agreement represented that Defendant had $825,875.00 in farm sales annually.

14. By the terms of the Application and Agreement, Defendant represented and warranted to Rabo that information provided in the Application and Agreement is true and correct.

15. By the terms of the Application and Agreement, Defendant acknowledges that information provided therein serves "as the basis [for Rabo] making a credit decision on the Agreement."

16. As a result of the information provided by Defendant in the Application and Agreement, Rabo extended four lines of credit to Defendant between June 13, 2025 and August 1, 2025, as follows:

a. Account ending in 2003: Principal of $31,092.12, plus interest of $320.12, for a total of $31,412.87;

b. Account ending in 4001: Principal of $29,338.56, plus interest of $110.12, for a total of $29,448.68;

c. Account ending in 4002: Principal of $1,380.00, plus interest of $0.00, for a total of $1,380.00;

d. Account ending in 4003: Principal of $772.00, plus interest of $0.00, for a total of $772.00;

for a total indebtedness of $63,013.55 (the "Indebtedness").

17. The first credit advance under Account ending in 2003 was made on June 13, 2025. Additional advances were made on July 14, 2025, under Account ending in 4001. These credit extensions were made just weeks before the Defendant filed the Petition on July 23, 2025.

18. On August 1, 2025—after the Petition Date—Defendant made two additional draws totaling $2,152.00 under the Application and Agreement (Accounts ending in 4002 and 4003) without disclosing to Rabo that he had filed for bankruptcy. The post-petition draws further evidence Defendant's intent to deceive Plaintiff.

19. Defendant utilized those lines of credit but failed to make any payments to Rabo.

20. In his Petition and Schedules, Defendant represented to this Court, under the penalty of perjury:

a. that Defendant's total assets had a value of $1,261,420.00, nearly one million dollars less than what was represented in the Application and Agreement;

b. that Defendant's total liabilities were $1,427,782.67, nearly $600,000.00 more than what was represented in the Application and Agreement.

21. The representations Defendant made in the Application and Agreement were materially false and were made with the purpose of inducing Rabo into extending lines of credit to Defendant.

22. Rabo relied on Defendant's representations in the Application and Agreement in deciding to, and in fact, extending credit to Defendant.

23. On September 4, 2025, Rabo filed a proof of claim reflecting amounts owed under the Application and Agreement as of the Petition Date (the "Claim"). A true and accurate copy of Rabo's Proof of Claim is attached hereto and incorporated herein as **Exhibit B**.

## COUNT I
## DETERMINATION OF NONDISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(2)(A)

24. The allegations contained in the preceding paragraphs are realleged and reincorporated as if fully set forth herein.

25. Despite the representations in the Application and Agreement, Defendant was, and at all relevant times aware, that the representations were false and that his liabilities materially exceeded his assets.

26. Defendant knew at the time he completed and signed the Application and Agreement that the representations in the Application and Agreement were false, that Plaintiff would rely on those false representations; yet, he made the misrepresentations anyway, with the intent to deceive Plaintiff and to obtain the lines of credit from Rabo under false pretenses.

27. Plaintiff reasonably relied on the representations and warranties in agreeing to extend lines of credit contemplated by the Application and Agreement.

28. However, had Plaintiff known the true nature of the Defendant's financial condition, it would not have extended the unsecured lines of credit.

29. Defendant's knowing misrepresentations were made with the intent to deceive Plaintiff.

30. Additionally, Defendant's post-petition draws on August 1, 2025, made without disclosing his bankruptcy filing to Rabo, constitute further false pretenses and actual fraud.

31. 11 U.S.C. § 523(a)(2) provides, in relevant part:

> "(a) A discharge under 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor or any debt…
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by…
>
> (A) false pretenses, a false representation, or actual fraud…"

32. As set forth above, Defendant misrepresented material financial information, *inter alia*, the extent of his assets and liabilities, and Plaintiff reasonably relied upon Defendant's misrepresentations in agreeing to extend the unsecured lines of credit.

33. Based on the aforementioned conduct, Plaintiff is entitled to a judgment determining that Rabo's Claim is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Find and conclude that Plaintiff's Claim is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

2. Enter judgment determining that the Indebtedness in the amount of $63,013.55, plus accrued interest, fees, and costs, is nondischargeable;

3. Tax the costs of this adversary proceeding against Defendant; and

4. Provide for such other and further relief as this Court deems just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated: July 9, 2026

**WOMBLE BOND DICKINSON (US) LLP**

WOMBLE BOND DICKINSON (US) LLP

By: /s/ Eudora F. S. Arthur
EUDORA F. S. ARTHUR
NC State Bar No. 59854
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Telephone: 919.755.2178
E-Mail: dorie.arthur@wbd-us.com

*Attorneys for Rabo AgriFinance LLC, Pro Hac Vice*

# BECK'S — QuickLink Credit® Application and Account Agreement

Rabo AgriFinance

*For quicker processing of your application, please apply online at Grower.Raboag.com*

## (1) Line of Business Information*

Corn [x] Soybean [x] Cotton [ ] Wheat [ ] Other [x] Please Describe: Hay

Do you sell your crop/products and/or have business activities outside the US*? No [x] Yes [ ] If yes, please list countries: ______

## (2) Applicant Information *(Sign Endorsement Box 1 on page 4) – An individual is REQUIRED on ALL applications*

*Required

First Name*: Jeff Middle Initial: H. Last Name*: Beyes Suffix: ——

Social Security Number*: [redacted]nail*: ——

Home Physical Address*: 812 Hwy 203 City*: Lexington State*: In Zip*: 47138

Mailing Address: ______ City: ______ State: ______ Zip: ______

Mobile Phone*: 502-693-6481 Other Phone*: —— Other Phone Type*: Office [ ] Home [ ]

US Citizen*: Yes [x] If no, Citizenship: ______ US Permanent Resident: Yes [x] No [ ] Bankruptcy*: Yes [ ] No [x]

## (2a) Joint Applicant Information *(Sign Endorsement Box 2) – Complete this section if you intend to apply for joint credit*

*Required, if applying jointly

First Name*: ______ Middle Initial: ______ Last Name*: ______ Suffix: ______

Social Security Number*: ______ Date of Birth*: ______ Email Address*: ______

Home Physical Address*: ______ City*: ______ State*: ______ Zip*: ______

Mailing Address: ______ City: ______ State: ______ Zip: ______

Mobile Phone*: ______ Other Phone*: ______ Other Phone Type*: Office [ ] Home [ ]

US Citizen*: Yes [ ] If no, Citizenship: ______ US Permanent Resident: Yes [ ] No [ ] Bankruptcy*: Yes [ ] No [ ]

## (2b) Entity Information *(Sign Endorsement Box 3) – Complete this section if you intend to apply for joint credit*

*Required, if applying as an entity

By including entity information below you are stating that you would like the Account and Statements to be issued in the name of the Entity.

Entity Type*: [ ] Corporation [ ] General Partnership [ ] LLP [ ] LLC [ ] Other: ______ Bankruptcy*: Yes [ ] No [ ]

– ALL ENTITIES: Complete & Sign 1.) the page 4 Endorsement AND 2.) the Certification of Beneficial Owners Addendum –

– ALL PARTNERSHIPS: Please also provide a copy of the most recent Tax Form 1065 (first page only) –

Legal Name*: ______ Tax Identification Number*: ______

Physical Address*: ______ City*: ______ State*: ______ Zip*: ______

Mailing Address: ______ City: ______ State: ______ Zip: ______

State of Organization*: ______ Date of Organization*: ______ Phone*: ______

*---For requests over $400K, please attach the Partnership Agreement, Articles of Incorporation, Operating Agreement (LLC) or other relevant formation documents.---*

## (3) Financial Information

Applicant Balance Sheet — Date of Balance Sheet*: 1 / 31 / 23

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Short Term Assets* | (A) $288,950 | Short Term Liabilities* (E) | $ —— |
| Intermediate Assets* | (B) $329,000 | Intermediate Liabilities* (F) | $ 28,000 |
| Long Term Assets* | (C) $1,600,000 | Long Term Liabilities* (G) | $ 824,000 |
| Total Assets* | (D) $2,217,950.00 | Total Liabilities* (H) | $ 852,000 |
| | | Total Equity* (D-H) | $1,365,950 |

| Annual Sales | |
|---|---|
| Gross Crop Sales*: | $650,375 |
| Gross Livestock Sales: | $ —— |
| Other Farm Income: | $175,500 |
| Total Farm Sales*: | $825,875 |
| Any Off Farm Income: | $ —— |

*Please provide most recent schedule F, if applying for over $200,000.*

| Crop | Acres | Average Yield | Expected Price |
|---|---|---|---|
| Soybeans | 475 | 55 | 13.80 |
| Corn | 250 | 170 | 6.82 |
| Hay | 375 | 60.00 Rd Bales 7,000 Sq Bales | 175,500 |

## (4) Retailer Information

Retailer Name: John McNeely City: Scottsburg State: In Retailer Phone: 812-595-2451

Remit To:
Rabo AgriFinance LLC
1402 Technology Parkway
Cedar Falls, IA 50613

Phone: (888) 395-8505
Fax: (866) 349-3139
Email to: QuickLink@raboag.com

063022QIRR

Applicants: Please sign page 4.

Applicants: Please sign page 4.

QuickLink Credit® Program – PLEASE SIGN AND RETURN. KEEP A COPY FOR YOUR RECORDS

## *Application and Account Agreement*

You promise to pay to Rabo AgriFinance LLC, (referred to herein as "RAF"), or its successors or assignees at Post Office Box 410650, Saint Louis, Missouri 63141, the outstanding principal balance and accrued interest on this QuickLink Credit® Application and Account Agreement (hereinafter the "Agreement") as agreed and further described below. The words you, your, and yours mean each person and/or entity who applies for and is granted credit pursuant to this Agreement. You authorize any one or more dealers (each hereinafter a "Dealer") who has been approved by RAF to conduct business pursuant to one or more written agreements with RAF to submit proof(s) of your purchase(s) of products and/or services to RAF and for RAF to provide advances in payment of such purchases under this Agreement (each hereinafter an "Advance" or "Advances") and you authorize RAF to advance, at its option, under this Agreement sufficient funds to satisfy any outstanding obligations to Dealer. Advances shall be equal to the amounts identified on the invoices or other proofs of purchase, sale or delivery submitted by Dealers to RAF. You understand and agree that RAF may rely on all invoices or other proofs of purchase, sale or delivery submitted by the Dealer whether such invoices or other proofs of purchase, sale or delivery are submitted verbally, in writing or electronically to the same extent as if you had personally signed a receipt for such purchase or other request for payment. Each Advance is deemed to be an advance of funds to you under this Agreement.

**Conditions:** You understand that no Advances will be made under this Agreement until this Agreement is approved by RAF. You understand that RAF may at any time discontinue your ability to receive Advances or have Advances made on your behalf under this Agreement if any of the following occur: 1) if the total of any invoice or other proof of purchase, sale or delivery, when combined with the current principal balance of this Agreement, would cause the amount due on this Agreement to exceed the maximum credit limit approved by RAF; 2) the Draw Period (as defined herein) has passed; 3) you are in default of this Agreement, any of the Security Documents (as defined herein) or any supporting loan documents; 4) the request is not allowed under the then currently existing policies and procedures of RAF in effect under this financing program; or 5) there has been a material adverse effect in your ability to satisfy your obligations to RAF, as determined solely by RAF.

**Credit Limit:** When the Agreement is approved by RAF, RAF shall then notify you of its approval and the applicable Draw Period (as defined herein). You understand that the maximum amount of revolving credit available to you at any one point in time will be identified in the approval letter or other notice issued by RAF, and regardless of the amount specified on this Agreement the actual credit available hereunder shall not exceed the credit approved by RAF. However, RAF may, in its sole discretion, make an Advance for purchases in response to your request which exceeds such limit. In such cases, you agree that all such Advances shall be covered by all the terms and conditions contained in this Agreement, the Security Documents (as defined herein), if any, and any other agreements between you and RAF.

**Draw Period:** The Draw Period is the time period during which Advances may be made under this Agreement. RAF may modify the Draw Period at its sole discretion. Advances, including Advances for Special Promotions (as defined herein), will only be available if the Draw Period extends beyond the availability of the Special Promotion. However, RAF may, in its sole discretion make an Advance for purchases in response to your request which exceeds the Draw Period. In such cases, you agree that all such Advances shall be covered by all the terms and conditions contained in this Agreement, the Security Documents (as defined herein), if any, and any other agreements between you and RAF.

**Special Promotions:** You may participate in one or more programs including special promotional financing terms, such as extended free periods, incentive interest rates on certain purchases or for limited time periods or other promotions that may be available at RAF's and/or Dealer's discretion (each of these defined herein as "Special Promotions"). These Special Promotions may be disclosed by the Dealer at the time of your purchase or by RAF. Eligibility requirements for Special Promotions vary by dealer and are offered at RAF's and/or Dealer's discretion. The applicable Special Promotion will be identified in your Billing Statements (as defined herein). You understand and agree to the following;

**Advances:** Each Advance shall be subject to the terms and conditions of any applicable Special Program) and shall include its own Maturity Date (as defined herein), interest rate and Payment terms.

**Disclaimer or Warranties:** You agree that purchases financed by RAF have not been produced or manufactured by RAF. You acknowledge that you are purchasing the products and/or services from the Dealer and/or manufacturer and not RAF. You understand and agree that RAF is financing the purchase for you on an as-is, where-is basis without any warranty, expressed or implied, by RAF. This includes any **IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT AND/OR FITNESS FOR ANY PARTICULAR PURPOSE.** You understand that the products and/or services may be covered by warranty of the manufacturer and/or Dealer. Such warranties are usually in writing and attached to the product or their containers. You understand that such warranties may be limited and that you will direct any questions or complaints directly to the manufacturer and/or Dealer and that you will not raise any defenses to this Agreement based upon the products or services you have purchased.

**Return of Purchases:** You agree that if you return a purchase financed through the use of this Agreement, you will return the purchase to the Dealer who delivered the purchase to you and you will cause any and all payments or credits for all refund amounts, as determined by that Dealer's policies, to be sent directly to RAF. Any such returns and refunds will not diminish or otherwise affect your obligation to RAF for the repayment to RAF of any and all monies advanced on your Agreement, including, but not limited to, monies owing on account of the financing of the purchases returned unless and until such credit is received by RAF.

**Interest Rate:** You agree to pay interest from the earlier of a) the time of an Advance or b) the date on which RAF becomes obligated to make an Advance on your behalf (each a "Time of Each Advance") regardless of whether or not you actually obtained possession of or received the product or service on that date, subject to any applicable grace periods. For Advances not subject to Special Promotion or for those time periods when a Special Promotion does not apply, you agree to pay from the Time of Each Advance until paid in full interest at the non-default annual rate equal to ten percent (10.00%) in excess of the Prime Rate (the "Standard Rate"), which rate shall be adjusted as of each day of change thereof to reflect changes in the Prime Rate. Any change in your interest rate, except a change due to a change of the Prime Rate, expiration of a Special Promotion or event of default, will be as disclosed to you in a subsequent notice as provided in the section entitled "Changes to Your Account Agreement and Credit Limit." For purposes of this Agreement, the term "Prime Rate" means for any day the highest rate published from time to time in the "Money Rates" section of *The Wall Street Journal* as the Prime Rate for that day (or, if *The Wall Street Journal* is not available, any other authoritative source of that rate selected by Lender) provided however, that at any time the Prime Rate is less than zero, the Prime Rate used in this Agreement for the interest rate calculation shall be zero. Any interest or principal hereof which is not paid by the Maturity Date or subsequent to any other event of default shall bear interest until such amounts are paid in full at the rate of twenty-one percent (21%) per year. All interest hereunder shall be calculated based on a year of 360 days and the actual number of days elapsed. Notwithstanding anything to the contrary herein, the interest rate shall at no time exceed the maximum rate, if any, permitted by applicable law. Upon expiration of a Special Promotion rate you understand that the rate will be automatically and immediately, without additional notice, adjusted to the Standard Rate.

**Texas Residents:** The ceiling rate for this Agreement, both before and after maturity, is the (weekly) ceiling rate announced by the Credit Commissioner from time to time.

**Minimum Interest Charge:** If interest is accruing on the principal balance due under this Agreement, but the total of such interest for purchases is less than \$.50 in a billing period, RAF will assess a minimum interest charge of \$.50 in a billing period.

**Payments:** Each Special Promotion program may include separate payments identified in your Billing Statement. Failure to make any payment on time may be considered a default under this Agreement. The balance shown on your Billing Statement may include amounts subject to different periodic rates. The sooner you pay the balance shown on your Billing Statement, the less you will pay in interest. Instructions for making payments are on your Billing Statement. In order to be credited as of a particular day, your payment must be received by RAF by the date and time specified in the Billing Statement. Do not send cash payments. RAF can accept late or partial payments, as well as payments that reflect "paid in full" or other restrictive endorsements, without losing any of its rights under this Agreement. If your payment due date falls on a Saturday, Sunday or holiday, the payment due date will not be extended. You may, at any time, prepay the balance due under this Agreement in full or make partial repayments hereon, without penalty or premium. Depending upon the terms of any applicable Special Promotion governing your Advance(s), all or a portion of your balance may require periodic payments. For that portion of your balance that requires a periodic payment, RAF must receive at least the Minimum Payment (as defined herein), as calculated below, by the payment due date. The Minimum Payment (as defined herein) is calculated as follows: the sum of all accrued interest plus interest which is estimated to accrue through the payment due date plus any principal reduction required based on the applicable program criteria (which you acknowledge receipt of or as may be subsequently disclosed to you by RAF or Dealer) plus any amount that is past due and any amount in excess of your credit limit plus any costs and/or fees incurred by RAF in conjunction with this Agreement ("Minimum Payment"). An increase in the variable rate will have the effect of increasing the monthly and final payments.

**Maturity Date:** The maturity date is the date in which the Advance is due in full ("Maturity Date"). The Maturity Date of each advance shall be identified to you by RAF on the Billing Statement (as defined herein). Failure to pay this amount on the Maturity Date constitutes a Default under this agreement.

**Determination of the Total Due:** The total outstanding balance (the amount you owe RAF) is equal to your current principal balance plus accrued interest. To calculate the total outstanding balance, RAF begins with the outstanding principal balance on your account at the beginning of each billing period and adds any purchases and subtracts any credits or payments credited in that billing period. RAF then adds the applicable interest charges, fees and costs and then makes any other applicable adjustments.

**Payment Application:** RAF shall apply payments in its sole discretion. Generally, payments will be applied first to fees and costs of collection, if any, then to accrued and unpaid interest, and then in reduction of the outstanding principal balance, and RAF will allocate payments to pay off balances at lower periodic interest rates before paying off balances at higher periodic interest rates.

**Credit Balance:** If you have a credit balance in your account under this Agreement, RAF may return to you any credit over $30.00. You may request a refund of a credit balance at any time. RAF may reduce the amount of any credit balance by the amount of any new Advance. If after ninety days a credit balance of less than $30.00 remains in your account, you will forfeit the amount to RAF.

**Billing Statement:** Your billing statement, as prepared by RAF, shows the total balance, any interest charges, fees, costs, the minimum payment due and the payment due date ("Billing Statement" or "Billing Statements"). The Billing Statement may also show your current Agreement credit limit, an itemized list of current purchases, payments and credits, an interest rate summary or other important information. If RAF deems your account uncollectible or if RAF initiates collection proceedings, RAF, in its sole discretion, may stop sending you Billing Statements. However, interest charges, fees and costs will continue to accrue regardless of whether RAF sends you Billing Statements. RAF will send Billing Statements to you on dates and intervals as determined by RAF. The Billing Statements will be deemed correct and accepted by you unless you notify RAF in writing within 20 days of the date of the Billing Statement. If you believe there is an error on your Billing Statement, you must notify RAF, in writing, at P.O. Box 410650, Saint Louis, MO 63141 within the 20 day period.

**Billing Address and Name:** You must notify RAF of any changes in your mailing address and/or name by contacting RAF at (888) 395-8505 or any subsequent telephone number as may be shown on your Billing Statement. For your protection, RAF may require written confirmation of your address or name change(s). RAF will mail your Billing Statement to only one address.

**Changes to Your Account Agreement and Credit Limit:** Except as otherwise prohibited by law, at RAF's discretion, RAF may change your credit limit, Maturity Date, fees, costs, interest rate, Special Promotion, or other terms of your Agreement at any time. RAF will notify you of any change to your Agreement either by sending you a separate notice or through your Billing Statement. A change may take effect before you receive notification from RAF. You may request a change to your credit limit by contacting RAF at (888) 395-8505 or at any subsequent telephone number as may be shown on your Billing Statement. RAF may require additional documentation from you before approving or denying changes you request to your credit limit. RAF can add or delete provisions relating to your Agreement and to the nature, extent and enforcement of the rights and obligations RAF or you may have relating to this Agreement. These changes are binding on you. In the event any change will cause a fee, rate or minimum payment to increase (other than due to a change in the Prime Rate, expiration of a Special Promotion or event of default ), RAF will mail you written notice at least 15 days before the beginning of the billing period in which the change will become effective. If you do not agree to the change, you must notify RAF in writing within 25 days after the effective date of the change and pay RAF the total outstanding balance under the terms of the unchanged Agreement. Any charges made pursuant to this Agreement by you after the effective date of the change shall be deemed acceptance by you of the change, even if the 25 days have not expired.

**Security Documents:** This Agreement shall be secured by any existing and future security agreements, mortgages, deeds of trust or other pledges of collateral (the "Security Documents") between RAF and you, if any. You understand that RAF may require a pledge of collateral to secure the credit or financing applied for in the event that you fail to meet RAF's criteria for providing unsecured credit or financing.

**Security Interest:** In addition to any other security pledges granted to RAF, you grant RAF a purchase money security interest in all purchases financed under your Agreement and the proceeds of the purchases, including insurance proceeds. This provision does not apply if you reside in North Carolina and the interest on a purchase or transaction exceeds 15%. RAF's security interest continues until the purchase is paid for in full by application of your payments in the manner described in this Agreement.

**Default:** You understand that you will be in default of this Agreement if any one or more of the following events occur: 1) you fail to make payment of the amount due on the Maturity Date; 2) you fail to keep any other promise, under this Agreement or any other loan document, with RAF; 3) you are in default pursuant to the terms of any other loan or loan document you have with RAF; 4) any other creditor of yours attempts to collect the debt you owe them through court proceedings; 5) you die; 6) you file bankruptcy; 7) you do or fail to do something which causes RAF to reasonably believe you will not be able to satisfy your obligations you owe to RAF.

**Collection of Costs:** You agree that you will be liable to RAF for any costs incurred by RAF in perfecting its secured position in the event that this Agreement is secured with any collateral. You authorize RAF to advance sufficient funds under this Agreement to pay all costs incurred by RAF in perfecting its security position. To the extent not prohibited by law you also agree that you will pay all costs of collections, whether secured or not, including reasonable attorney fees, together with interest at the default rate if you do not timely pay your obligations to RAF.

**Annual Fee:** There are no annual fees to have this Agreement.

**Applicable Law:** This Agreement shall be governed by the laws of the State of Iowa.

**Remedies:** If you are in default of this Agreement, you understand that RAF has any and all of the following remedies: 1) RAF may demand immediate payment in full of all that you owe RAF under this Agreement; 2) RAF may setoff against any rights you have to payment from RAF; 3) RAF may demand additional security or additional parties to be obligated to pay your obligations in exchange for not immediately using any of the other remedies in this paragraph; 4) RAF may refuse to make any additional Advances under this Agreement; 5) RAF may seek any collection efforts of any collateral that may exist under any agreement between RAF and you; or 6) RAF may use any other remedy available under any appropriate state or federal law. By selecting one or more of these remedies, RAF does not give up its right to use any other remedies. If RAF, in its sole discretion, waives its right to exercise any remedy upon the event of default, RAF does not waive its right to later exercise any remedies based upon such default.

**Waiver:** By execution of this Agreement you agree you will not require RAF to: 1) demand payment of the amounts due (presentment); 2) obtain official certification of non- payment (protest); 3) give notice that the amounts due have not been paid (notice of dishonor); 4) give notice of intention to accelerate; or 5) give notice of acceleration. You also give up any rights you may have under any valuation or appraisal laws, which may apply to you.

**Consent to Jurisdiction:** You agree that the acceptance and approval of the Agreement occurred in Cedar Falls, Iowa and that performance of this Agreement by you involves payment to RAF in Cedar Falls, Iowa. You knowingly and voluntarily consent to be subject to the jurisdiction in the State of Iowa for purposes of adjudicating any rights and liabilities of the parties pursuant to this Agreement, with venue to be in the Iowa District Court for Black Hawk County, Iowa, or the United States Federal District Court for the Northern District of Iowa.

**Telephone Monitoring and Recording:** RAF may monitor and record your telephone calls with RAF to assure the quality of RAF's service.

**Cancelling the Account Agreement:** You may cancel this Agreement at any time by notifying RAF in writing. In the event you cancel the Agreement, you remain responsible to pay the principal balance, interest, costs and fees according to the terms of the Agreement.

**Assignment:** RAF reserves the right to assign any or all of RAF's rights and obligations under this Agreement to a third party. You shall not assign any or all of your rights and obligations under this Agreement without the written permission of RAF.

**Unauthorized Use of the Agreement:** If you believe there has been any unauthorized use or charges to your Agreement, you must notify RAF immediately by calling (888) 395-8505 or any subsequent telephone number as may be shown on the Billing Statement. RAF may require you to provide certain information in writing to help RAF determine what happened, and to comply with such procedures as RAF may require for RAF's investigation.

**Facsimiles:** In the event that any signature is delivered by facsimile (fax) transmission or by e-mail delivery of a ".pdf" format data file, such signature shall be considered a binding signature and shall have the same force and effect as an original signature. You will ensure that all documents bearing the original signature will be forwarded to RAF as soon as possible after being faxed or emailed via "pdf", but failure to provide such documents with original signatures shall not affect the ability of either party to rely on fax signatures to the same extent as an original.

**Disclosure of Information:** RAF may use the above information and other personal information collected or compiled by RAF in connection with this Agreement (including account status and payment history) (collectively the "Information") to share with third-party partners and program sponsors in determining whether to extend credit. RAF may from time to time share and/or exchange information with those involved in your commercial transaction(s) including Manufacturers, Dealers, and third party partners as well as RAF's affiliates and/or agents for the purposes of including, but not limited to, opening, administering, servicing, transacting on and enforcing your commercial transactions, your agreements, collecting amounts owing to RAF or its assignees, verifying and evaluating your current and ongoing creditworthiness and financial status, responding to your inquiries and otherwise communicating with you regarding your account(s), including contacting you regarding extensions or renewals of this Agreement. **Privacy:** You acknowledge to be bound by and consent to RAF's most recent Privacy Statement as it appears on the website www.Raboag.com/security-privacy/privacy-statement-157. If you are unable to access the website, you may call RAF at (888) 395-8505 to obtain a copy of the documentation.

**Representations and Warranties:** You represent and warrant that all information you provided in the Agreement is true and correct. You acknowledge all information contained in the Agreement is material and serves as the basis for RAF making a credit decision on the Agreement. You further represent and warrant that the extension of credit evidenced by this Agreement is for business, commercial or agricultural purposes and is not for consumer purposes. Your submission of any report, record or other information pertaining to you or any of your subsidiaries conditions or operations, financial or otherwise, from time to time, whether or not required under the terms of this instrument, will be deemed to be accompanied by a representation by you that such report, record or information is complete and accurate in all material respects as to your or any of your subsidiaries (and, if applicable, any of your subsidiaries' partners, shareholders, members, or other principals) conditions or operations, as of the

date of such submission, including, without limitation, all material contingent liabilities, conditions or operations.

**Notice to Missouri Applicants:** Oral or unexecuted agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the Agreement. To protect the applicant(s) under this Agreement and RAF from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this Agreement and the Security Documents which are the complete and exclusive statements of the agreement between us, except as we may later agree in writing to modify such documents.

**Michigan Business Purposes Affidavit:** If you are a resident of Michigan or if your primary business address is in Michigan, by signing below you hereby certify that you are engaged in the business of commercial farming and that all products purchased on credit or other loan proceeds otherwise made available to you under this Agreement will be used exclusively for commercial agricultural purposes. This declaration is made under penalty of perjury.

**Affirmations:** By Signing below, you agree to the following:

**1)** You certify that the Agreement is submitted on your behalf for the purpose of procuring, establishing and maintaining credit from time to time with RAF and that all information provided in the Agreement is true and accurate as of this date, including but not limited to your physical address, date of birth and social security number.

**2)** You have carefully read the information contained within the Agreement and warrant it to be complete, true and accurate as of the dates set forth below and that RAF and its affiliates may continue to rely upon the Agreement continuing to be true and correct unless and until a written notice of change is given by you. In conjunction with the submission of your Agreement, you authorize RAF to obtain a credit bureau report from any credit reporting agency and to request confirmation of financial or other information of any kind whatsoever from any third party having dealings with you.

**3)** You have read, understand and agree to the terms of this Agreement consisting of four pages. You agree to the terms and conditions of this Agreement as written by RAF without any changes by you. Any changes you make to this Agreement without the written consent of RAF shall be null and void. You have retained a signed copy of this Agreement.

**4)** You agree that there is and shall be no oral commitment to extend credit to you and that a written commitment signed by RAF, when and if the Agreement is approved, shall constitute the only form of commitment by RAF. RAF shall have no liability to you or others in the event your Agreement is denied. If a loan shall be offered to, and accepted by, you differing as to amount, plan, rate, term or in any other respect from that hereinbefore negotiated, this Agreement shall nevertheless constitute your application for the loan actually accepted by you.

**5)** Your obligations as the applicant and a borrower and any co-borrower shall be joint and several. Each and every individual and entity signing below shall be held to be an applicant and a borrower.

**6)** If you are a partnership, corporation or other entity and you are signing on behalf of such entity, you hereby warrant and certify that you have been duly appointed and authorized by the entity to act on its behalf with respect to this Agreement and the credit and financing applied for, and you are so authorized to transact such business on behalf of the partnership, corporation or other entity as of the date hereof. You further agree to notify RAF immediately of any ownership changes of any entity listed on this Agreement.

**7)** You agree that RAF may notify any Dealer in the event your Agreement is approved or denied and RAF may advise the Dealer as to the credit limit and amount of credit remaining available on your Agreement.

**8)** You authorize any third party to release to RAF and for RAF to obtain written or oral credit information from any source whatsoever, including, but not limited to, credit reporting agencies and any governmental agency, even if such information would otherwise be protected under any financial privacy acts.

**9)** You affirm that you are now, and will remain throughout the term of this agreement, in compliance with all state and federal laws.

**USA PATRIOT Act – Customer Identification Program** – Enacted to help the government fight the funding of terrorism and money laundering activities. Federal law requires all financial institutions to obtain, verify and record information that identifies each person who applies for a loan. When you apply for a loan we will ask you for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**1 Endorsement Box 1**

Amount Requested*: 25,000

Finance Program / Brand of Products*: Beck's

[signature] — Applicant / Borrower Signature*

2-8-23 — Date*

*An Individual is Required on all applications*

**2 Endorsement Box 2** *Required if applying with another Individual*

Co-Applicant / Co-Borrower Signature*

Date*

**3 Endorsement Box 3** *Required if applying with an entity*

Entity Co-Applicant / Co-Borrower:

Entity Legal Name (as shown on formation documents & page 1 of the application)*

Authorized Representative Signature*

Title*

Date*

* Required field, if applicable per page 1

- *All ENTITIES:* ***Please Complete Certification of Beneficial Owners Addendum***

- *All PARTNERSHIPS:* ***Please also provide a copy of the most recent Tax Form 1065 (first page only)***

ORIGINAL

**Fill in this information to identify the case:**

Debtor 1 Jeffery Bayes

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court **Southern District of Indiana**

Case number: **25−90845**

FILED
**U.S. Bankruptcy Court**
**Southern District of Indiana**
9/4/2025
**Eric R. Kleis, Clerk**

# Official Form 410
# Proof of Claim

**04/25**

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

Rabo AgriFinance LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor: Craig Nahnsen

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? ____________

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|
| Rabo AgriFinance LLC | |
| Name | Name |
| 1402 Technology Parkway<br>Cedar Falls, IA 50613 | |
| Contact phone 3195755430 | Contact phone ____________ |
| Contact email craig.nahnsen@raboag.com | Contact email ____________ |
| Uniform claim identifier (if you use one): ____________ | |

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) ________ Filed on ____________ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? ____________

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 4906 |
| 7. **How much is the claim?** | $ 60748.06<br>**Does this amount include interest or other charges?**<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br>agricultural account agreement |
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: ______<br>**Basis for perfection:** ______<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br>**Value of property:** $ ______<br>**Amount of the claim that is secured:** $ ______<br>**Amount of the claim that is unsecured:** $ ______ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br>**Amount necessary to cure any default as of the date of the petition:** $ ______<br>**Annual Interest Rate** (when case was filed) ______ %<br>☐ Fixed<br>☐ Variable |
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ ______ |
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: ______ |

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☑ No

☐ Yes. *Check all that apply*:

**Amount entitled to priority**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

| | |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ |

* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 9/4/2025
MM / DD / YYYY

/s/ Craig Nahnsen
Signature

Print the name of the person who is completing and signing this claim:

Name: Craig Nahnsen
First name Middle name Last name

Title: V.P – Delinquency Manager

Company: Rabo AgriFinance LLC
Identify the corporate servicer as the company if the authorized agent is a servicer

Address: 1402 Technology Parkway
Number Street
Cedar Falls, IA 50613
City State ZIP Code

Contact phone 3195755430 Email craig.nahnsen@raboag.com

**Fill in this information to identify the case:**

Debtor 1 Jeffrey H. Bayes

Debtor 2 ______________________
(Spouse, if filing)

United States Bankruptcy Court for the: Southern District of Indiana

Case number 25-90845-AKM-13

Official Form 410

# Proof of Claim

12/24

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

1. **Who is the current creditor?**

   Rabo AgriFinance LLC
   Name of the current creditor (the person or entity to be paid for this claim)

   Other names the creditor used with the debtor ______________________

2. **Has this claim been acquired from someone else?**

   ☑ No
   ☐ Yes. From whom? ______________________

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|
| Name: Rabo AgriFinance LLC | Name: |
| Number Street: 1402 Technology Parkway | Number Street: |
| City: Cedar Falls State: IA ZIP Code: 50613 | City: State: ZIP Code: |
| Contact phone: 319-575-5430 | Contact phone: |
| Contact email: craig.nahnsen@raboag.com | Contact email: |

   Uniform claim identifier (if you use one): __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

4. **Does this claim amend one already filed?**

   ☑ No
   ☐ Yes. Claim number on court claims registry (if known) ______ Filed on ______ MM / DD / YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**

   ☑ No
   ☐ Yes. Who made the earlier filing? ______________________

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

❑ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 4 9 0 6

**7. How much is the claim?**

$ 60,748.06 . **Does this amount include interest or other charges?**

❑ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

agricultural account agreement

**9. Is all or part of the claim secured?**

☑ No
❑ Yes. The claim is secured by a lien on property.

**Nature of property:**

❑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
❑ Motor vehicle
❑ Other. Describe: ____________________

**Basis for perfection:** ____________________

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $__________

**Amount of the claim that is secured:** $__________

**Amount of the claim that is unsecured:** $__________ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $__________

**Annual Interest Rate** (when case was filed)_______%

❑ Fixed
❑ Variable

**10. Is this claim based on a lease?**

☑ No
❑ Yes. **Amount necessary to cure any default as of the date of the petition.** $__________

**11. Is this claim subject to a right of setoff?**

☑ No
❑ Yes. Identify the property: ____________________

| | | |
|---|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>❑ Yes. *Check one:* | **Amount entitled to priority** |
| | ❑ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $____________ |
| | ❑ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $____________ |
| | ❑ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $____________ |
| | ❑ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $____________ |
| | ❑ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $____________ |
| | ❑ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $____________ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.
❑ I am the creditor's attorney or authorized agent.
❑ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
❑ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 9/1/2025 | 8:39 AM CDT
MM / DD / YYYY

Signed by:
Craig Nahnsen
90B5003E12E24BC...
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Craig Nahnsen
First name / Middle name / Last name

Title: V.P - Deleinquency Manager

Company: Rabo AgriFinance LLC
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 1402 Technology Parkway
Number Street
Cedar Falls, IA 50613
City State ZIP Code

Contact phone: 319-575-5430 Email: craig.nahnsen@raboag.com

Attachment to Proof of Claim

(Jeffrey Bayes file no 25-90845-AKM-13)

The Proof of Claim reflects the amount owing as of July 23, 2025, the date of the bankruptcy. Subsequently, on August 1, 2025, the Debtor made two additional draws totaling $2,152.00. This subsequent amount is a post-petition claim and is provided for informational purposes only.

DLG MS

08/05/2025

Jeff H Bayes
812 SOUTH STATE ROAD 203
LEXINGTON IN 47138 US

# Payoff Notice

Date Printed: 08/05/2025

| | |
|---|---|
| Account Number | [redacted]12003 |
| Loan Date | 06/13/2025 |
| Maturity Date | 12/15/2025 |
| Payoff Date | 08/01/2025 |
| Interest Rate | 21.00000% |
| Per Diem | 18.13743 |
| Principal Balance | 31,092.75 |
| Accrued Interest | 320.12 |
| Payoff Amount | 31,412.87 |

08/05/2025

Jeff H Bayes
812 SOUTH STATE ROAD 203
LEXINGTON IN 47138 US

# Payoff Notice

Date Printed: 08/05/2025

| | |
|---|---|
| Account Number | [redacted]-14001 |
| Loan Date | 07/14/2025 |
| Maturity Date | 12/01/2025 |
| Payoff Date | 08/01/2025 |
| Interest Rate | 21.00000% |
| Per Diem | 17.11416 |
| Principal Balance | 29,338.56 |
| Accrued Interest | 110.12 |
| Payoff Amount | 29,448.68 |

DLG MS

08/05/2025

Jeff H Bayes
812 SOUTH STATE ROAD 203
LEXINGTON IN 47138 US

# Payoff Notice

Date Printed: 08/05/2025

| | |
|---|---|
| Account Number | [redacted]14002 |
| Loan Date | 08/01/2025 |
| Maturity Date | 11/15/2025 |
| Payoff Date | 08/01/2025 |
| Interest Rate | 21.00000% |
| Per Diem | 0.80500 |
| Principal Balance | 1,380.00 |
| Accrued Interest | 0.00 |
| Payoff Amount | 1,380.00 |

Case 25-90845-AKM Claim 12 Part 4 Filed 08/14/25 Pg 4 of 8

DLG MS
08/05/2025

Jeff H Bayes
812 SOUTH STATE ROAD 203
LEXINGTON IN 47138 US

# Payoff Notice

Date Printed: 08/05/2025

| | |
|---|---|
| Account Number | [redacted]14003 |
| Loan Date | 08/01/2025 |
| Maturity Date | 12/31/2025 |
| Payoff Date | 08/01/2025 |
| Interest Rate | 21.00000% |
| Per Diem | 0.45033 |
| Principal Balance | 772.00 |
| Accrued Interest | 0.00 |
| Payoff Amount | 772.00 |

BECK'S **QuickLink Credit® Application and Account Agreement** Rabo AgriFinance

*For quicker processing of your application, please apply online at Grower.Raboag.com*

## (1) Line of Business Information*

Corn [x] Soybean [x] Cotton [ ] Wheat [ ] Other [x] Please Describe: Hay

Do you sell your crop/products and/or have business activities outside the US*? No [x] Yes [ ] If yes, please list countries: ______

## (2) Applicant Information *(Sign Endorsement Box 1 on page 4) – An individual is REQUIRED on ALL applications*

* Required

First Name*: Jeff Middle Initial: H. Last Name*: Bayes Suffix: ——

Social Security Number*: [redacted] ...ail*: ——

Home Physical Address*: 812 Hwy 203 City*: Lexington State*: In Zip*: 47138

Mailing Address: ______ City: ______ State: ______ Zip: ______

Mobile Phone*: 502-693-6281 Other Phone*: —— Other Phone Type*: Office [ ] Home [ ]

US Citizen*: Yes [x] If no, Citizenship: ______ US Permanent Resident: Yes [x] No [ ] Bankruptcy*: Yes [ ] No [x]

## (2a) Joint Applicant Information *(Sign Endorsement Box 2) – Complete this section if you intend to apply for joint credit*

* Required, if applying jointly

First Name*: ______ Middle Initial: ______ Last Name*: ______ Suffix: ______

Social Security Number*: ______ Date of Birth*: ______ Email Address*: ______

Home Physical Address*: ______ City*: ______ State*: ______ Zip*: ______

Mailing Address: ______ City: ______ State: ______ Zip: ______

Mobile Phone*: ______ Other Phone*: ______ Other Phone Type*: Office [ ] Home [ ]

US Citizen*: Yes [ ] If no, Citizenship: ______ US Permanent Resident: Yes [ ] No [ ] Bankruptcy*: Yes [ ] No [ ]

## (2b) Entity Information *(Sign Endorsement Box 3) – Complete this section if you intend to apply for joint credit*

* Required, if applying as an entity

By including entity information below you are stating that you would like the Account and Statements to be issued in the name of the Entity.

Entity Type*: [ ] Corporation [ ] General Partnership [ ] LLP [ ] LLC [ ] Other: ______ Bankruptcy*: Yes [ ] No [ ]

– ALL ENTITIES: Complete & Sign 1.) the page 4 Endorsement AND 2.) the Certification of Beneficial Owners Addendum –

– ALL PARTNERSHIPS: Please also provide a copy of the most recent Tax Form 1065 (first page only) –

Legal Name*: ______ Tax Identification Number*: ______

Physical Address*: ______ City*: ______ State*: ______ Zip*: ______

Mailing Address: ______ City: ______ State: ______ Zip: ______

State of Organization*: ______ Date of Organization*: ______ Phone*: ______

*---For requests over $400K, please attach the Partnership Agreement, Articles of Incorporation, Operating Agreement (LLC) or other relevant formation documents.---*

## (3) Financial Information

**Applicant Balance Sheet** Date of Balance Sheet*: 1/31/23

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Short Term Assets* | (A) $288,950 | Short Term Liabilities* (E) | $ —— |
| Intermediate Assets* | (B) $324,000 | Intermediate Liabilities* (F) | $ 28,000 |
| Long Term Assets* | (C) $1,602,000 | Long Term Liabilities* (G) | $ 824,000 |
| Total Assets* | (D) $2,217,950.00 | Total Liabilities* (H) | $ 852,000 |
| | | Total Equity* (D-H) | $1,365,950 |

| Annual Sales | |
|---|---|
| Gross Crop Sales*: | $ 650,375 |
| Gross Livestock Sales: | $ —— |
| Other Farm Income: Hay | $ 175,500 |
| Total Farm Sales*: | $ 825,875 |
| Any Off Farm Income: | $ —— |

*Please provide most recent schedule F, if applying for over $200,000.*

| Crop | Acres | Average Yield | Expected Price |
|---|---|---|---|
| Soybeans | 475 | 55 | 13.80 |
| Corn | 250 | 170 | 6.82 |
| Hay | 375 | 600.00 Rd Bales 7.00 Sq Bales | 175,500 |

## (4) Retailer Information

Retailer Name: John McNeely City: Scottsburg State: In Retailer Phone: 812-595-2451

Remit To:
Rabo AgriFinance LLC
1402 Technology Parkway
Cedar Falls, IA 50613

Phone: (888) 395-8505
Fax: (866) 349-3139
Email to: QuickLink@raboag.com

063022QIRR

Applicants: Please sign page 4.

Applicants: Please sign page 4.

QuickLink Credit® Program – PLEASE SIGN AND RETURN. KEEP A COPY FOR YOUR RECORDS

## *Application and Account Agreement*

You promise to pay to Rabo AgriFinance LLC, (referred to herein as "RAF"), or its successors or assignees at Post Office Box 410650, Saint Louis, Missouri 63141, the outstanding principal balance and accrued interest on this QuickLink Credit® Application and Account Agreement (hereinafter the "Agreement") as agreed and further described below. The words you, your, and yours mean each person and/or entity who applies for and is granted credit pursuant to this Agreement. You authorize any one or more dealers (each hereinafter a "Dealer") who has been approved by RAF to conduct business pursuant to one or more written agreements with RAF to submit proof(s) of your purchase(s) of products and/or services to RAF and for RAF to provide advances in payment of such purchases under this Agreement (each hereinafter an "Advance" or "Advances") and you authorize RAF to advance, at its option, under this Agreement sufficient funds to satisfy any outstanding obligations to Dealer. Advances shall be equal to the amounts identified on the invoices or other proofs of purchase, sale or delivery submitted by Dealers to RAF. You understand and agree that RAF may rely on all invoices or other proofs of purchase, sale or delivery submitted by the Dealer whether such invoices or other proofs of purchase, sale or delivery are submitted verbally, in writing or electronically to the same extent as if you had personally signed a receipt for such purchase or other request for payment. Each Advance is deemed to be an advance of funds to you under this Agreement.

**Conditions:** You understand that no Advances will be made under this Agreement until this Agreement is approved by RAF. You understand that RAF may at any time discontinue your ability to receive Advances or have Advances made on your behalf under this Agreement if any of the following occur: 1) if the total of any invoice or other proof of purchase, sale or delivery, when combined with the current principal balance of this Agreement, would cause the amount due on this Agreement to exceed the maximum credit limit approved by RAF; 2) the Draw Period (as defined herein) has passed; 3) you are in default of this Agreement, any of the Security Documents (as defined herein) or any supporting loan documents; 4) the request is not allowed under the then currently existing policies and procedures of RAF in effect under this financing program; or 5) there has been a material adverse effect in your ability to satisfy your obligations to RAF, as determined solely by RAF.

**Credit Limit:** When the Agreement is approved by RAF, RAF shall then notify you of its approval and the applicable Draw Period (as defined herein). You understand that the maximum amount of revolving credit available to you at any one point in time will be identified in the approval letter or other notice issued by RAF, and regardless of the amount specified on this Agreement the actual credit available hereunder shall not exceed the credit approved by RAF. However, RAF may, in its sole discretion, make an Advance for purchases in response to your request which exceeds such limit. In such cases, you agree that all such Advances shall be covered by all the terms and conditions contained in this Agreement, the Security Documents (as defined herein), if any, and any other agreements between you and RAF.

**Draw Period:** The Draw Period is the time period during which Advances may be made under this Agreement. RAF may modify the Draw Period at its sole discretion. Advances, including Advances for Special Promotions (as defined herein), will only be available if the Draw Period extends beyond the availability of the Special Promotion. However, RAF may, in its sole discretion make an Advance for purchases in response to your request which exceeds the Draw Period. In such cases, you agree that all such Advances shall be covered by all the terms and conditions contained in this Agreement, the Security Documents (as defined herein), if any, and any other agreements between you and RAF.

**Special Promotions:** You may participate in one or more programs including special promotional financing terms, such as extended free periods, incentive interest rates on certain purchases or for limited time periods or other promotions that may be available at RAF's and/or Dealer's discretion (each of these defined herein as "Special Promotions"). These Special Promotions may be disclosed by the Dealer at the time of your purchase or by RAF. Eligibility requirements for Special Promotions vary by dealer and are offered at RAF's and/or Dealer's discretion. The applicable Special Promotion will be identified in your Billing Statements (as defined herein). You understand and agree to the following;

**Advances:** Each Advance shall be subject to the terms and conditions of any applicable Special Program) and shall include its own Maturity Date (as defined herein), interest rate and Payment terms.

**Disclaimer or Warranties:** You agree that purchases financed by RAF have not been produced or manufactured by RAF. You acknowledge that you are purchasing the products and/or services from the Dealer and/or manufacturer and not RAF. You understand and agree that RAF is financing the purchase for you on an as-is, where-is basis without any warranty, expressed or implied, by RAF. This includes any **IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT AND/OR FITNESS FOR ANY PARTICULAR PURPOSE.** You understand that the products and/or services may be covered by warranty of the manufacturer and/or Dealer. Such warranties are usually in writing and attached to the product or their containers. You understand that such warranties may be limited and that you will direct any questions or complaints directly to the manufacturer and/or Dealer and that you will not raise any defenses to this Agreement based upon the products or services you have purchased.

**Return of Purchases:** You agree that if you return a purchase financed through the use of this Agreement, you will return the purchase to the Dealer who delivered the purchase to you and you will cause any and all payments or credits for all refund amounts, as determined by that Dealer's policies, to be sent directly to RAF. Any such returns and refunds will not diminish or otherwise affect your obligation to RAF for the repayment to RAF of any and all monies advanced on your Agreement, including, but not limited to, monies owing on account of the financing of the purchases returned unless and until such credit is received by RAF.

**Interest Rate:** You agree to pay interest from the earlier of a) the time of an Advance or b) the date on which RAF becomes obligated to make an Advance on your behalf (each a "Time of Each Advance") regardless of whether or not you actually obtained possession of or received the product or service on that date, subject to any applicable grace periods. For Advances not subject to Special Promotion or for those time periods when a Special Promotion does not apply, you agree to pay from the Time of Each Advance until paid in full interest at the non-default annual rate equal to ten percent (10.00%) in excess of the Prime Rate (the "Standard Rate"), which rate shall be adjusted as of each day of change thereof to reflect changes in the Prime Rate. Any change in your interest rate, except a change due to a change of the Prime Rate, expiration of a Special Promotion or event of default, will be as disclosed to you in a subsequent notice as provided in the section entitled "Changes to Your Account Agreement and Credit Limit." For purposes of this Agreement, the term "Prime Rate" means for any day the highest rate published from time to time in the "Money Rates" section of *The Wall Street Journal* as the Prime Rate for that day (or, if *The Wall Street Journal* is not available, any other authoritative source of that rate selected by Lender) provided however, that at any time the Prime Rate is less than zero, the Prime Rate used in this Agreement for the interest rate calculation shall be zero. Any interest or principal hereof which is not paid by the Maturity Date or subsequent to any other event of default shall bear interest until such amounts are paid in full at the rate of twenty-one percent (21%) per year. All interest hereunder shall be calculated based on a year of 360 days and the actual number of days elapsed. Notwithstanding anything to the contrary herein, the interest rate shall at no time exceed the maximum rate, if any, permitted by applicable law. Upon expiration of a Special Promotion rate you understand that the rate will be automatically and immediately, without additional notice, adjusted to the Standard Rate.

**Texas Residents:** The ceiling rate for this Agreement, both before and after maturity, is the (weekly) ceiling rate announced by the Credit Commissioner from time to time.

**Minimum Interest Charge:** If interest is accruing on the principal balance due under this Agreement, but the total of such interest for purchases is less than $.50 in a billing period, RAF will assess a minimum interest charge of $.50 in a billing period.

**Payments:** Each Special Promotion program may include separate payments identified in your Billing Statement. Failure to make any payment on time may be considered a default under this Agreement. The balance shown on your Billing Statement may include amounts subject to different periodic rates. The sooner you pay the balance shown on your Billing Statement, the less you will pay in interest. Instructions for making payments are on your Billing Statement. In order to be credited as of a particular day, your payment must be received by RAF by the date and time specified in the Billing Statement. Do not send cash payments. RAF can accept late or partial payments, as well as payments that reflect "paid in full" or other restrictive endorsements, without losing any of its rights under this Agreement. If your payment due date falls on a Saturday, Sunday or holiday, the payment due date will not be extended. You may, at any time, prepay the balance due under this Agreement in full or make partial repayments hereon, without penalty or premium. Depending upon the terms of any applicable Special Promotion governing your Advance(s), all or a portion of your balance may require periodic payments. For that portion of your balance that requires a periodic payment, RAF must receive at least the Minimum Payment (as defined herein), as calculated below, by the payment due date. The Minimum Payment (as defined herein) is calculated as follows: the sum of all accrued interest plus interest which is estimated to accrue through the payment due date plus any principal reduction required based on the applicable program criteria (which you acknowledge receipt of or as may be subsequently disclosed to you by RAF or Dealer) plus any amount that is past due and any amount in excess of your credit limit plus any costs and/or fees incurred by RAF in conjunction with this Agreement ("Minimum Payment"). An increase in the variable rate will have the effect of increasing the monthly and final payments.

**Maturity Date:** The maturity date is the date in which the Advance is due in full ("Maturity Date"). The Maturity Date of each advance shall be identified to you by RAF on the Billing Statement (as defined herein). Failure to pay this amount on the Maturity Date constitutes a Default under this agreement.

**Determination of the Total Due:** The total outstanding balance (the amount you owe RAF) is equal to your current principal balance plus accrued interest. To calculate the total outstanding balance, RAF begins with the outstanding principal balance on your account at the beginning of each billing period and adds any purchases and subtracts any credits or payments credited in that billing period. RAF then adds the applicable interest charges, fees and costs and then makes any other applicable adjustments.

**Payment Application:** RAF shall apply payments in its sole discretion. Generally, payments will be applied first to fees and costs of collection, if any, then to accrued and unpaid interest, and then in reduction of the outstanding principal balance, and RAF will allocate payments to pay off balances at lower periodic interest rates before paying off balances at higher periodic interest rates.

**Credit Balance:** If you have a credit balance in your account under this Agreement, RAF may return to you any credit over $30.00. You may request a refund of a credit balance at any time. RAF may reduce the amount of any credit balance by the amount of any new Advance. If after ninety days a credit balance of less than $30.00 remains in your account, you will forfeit the amount to RAF.

**Billing Statement:** Your billing statement, as prepared by RAF, shows the total balance, any interest charges, fees, costs, the minimum payment due and the payment due date ("Billing Statement" or "Billing Statements"). The Billing Statement may also show your current Agreement credit limit, an itemized list of current purchases, payments and credits, an interest rate summary or other important information. If RAF deems your account uncollectible or if RAF initiates collection proceedings, RAF, in its sole discretion, may stop sending you Billing Statements. However, interest charges, fees and costs will continue to accrue regardless of whether RAF sends you Billing Statements. RAF will send Billing Statements to you on dates and intervals as determined by RAF. The Billing Statements will be deemed correct and accepted by you unless you notify RAF in writing within 20 days of the date of the Billing Statement. If you believe there is an error on your Billing Statement, you must notify RAF, in writing, at P.O. Box 410650, Saint Louis, MO 63141 within the 20 day period.

**Billing Address and Name:** You must notify RAF of any changes in your mailing address and/or name by contacting RAF at (888) 395-8505 or any subsequent telephone number as may be shown on your Billing Statement. For your protection, RAF may require written confirmation of your address or name change(s). RAF will mail your Billing Statement to only one address.

**Changes to Your Account Agreement and Credit Limit:** Except as otherwise prohibited by law, at RAF's discretion, RAF may change your credit limit, Maturity Date, fees, costs, interest rate, Special Promotion, or other terms of your Agreement at any time. RAF will notify you of any change to your Agreement either by sending you a separate notice or through your Billing Statement. A change may take effect before you receive notification from RAF. You may request a change to your credit limit by contacting RAF at (888) 395-8505 or at any subsequent telephone number as may be shown on your Billing Statement. RAF may require additional documentation from you before approving or denying changes you request to your credit limit. RAF can add or delete provisions relating to your Agreement and to the nature, extent and enforcement of the rights and obligations RAF or you may have relating to this Agreement. These changes are binding on you. In the event any change will cause a fee, rate or minimum payment to increase (other than due to a change in the Prime Rate, expiration of a Special Promotion or event of default ), RAF will mail you written notice at least 15 days before the beginning of the billing period in which the change will become effective. If you do not agree to the change, you must notify RAF in writing within 25 days after the effective date of the change and pay RAF the total outstanding balance under the terms of the unchanged Agreement. Any charges made pursuant to this Agreement by you after the effective date of the change shall be deemed acceptance by you of the change, even if the 25 days have not expired.

**Security Documents:** This Agreement shall be secured by any existing and future security agreements, mortgages, deeds of trust or other pledges of collateral (the "Security Documents") between RAF and you, if any. You understand that RAF may require a pledge of collateral to secure the credit or financing applied for in the event that you fail to meet RAF's criteria for providing unsecured credit or financing.

**Security Interest:** In addition to any other security pledges granted to RAF, you grant RAF a purchase money security interest in all purchases financed under your Agreement and the proceeds of the purchases, including insurance proceeds. This provision does not apply if you reside in North Carolina and the interest on a purchase or transaction exceeds 15%. RAF's security interest continues until the purchase is paid for in full by application of your payments in the manner described in this Agreement.

**Default:** You understand that you will be in default of this Agreement if any one or more of the following events occur: 1) you fail to make payment of the amount due on the Maturity Date; 2) you fail to keep any other promise, under this Agreement or any other loan document, with RAF; 3) you are in default pursuant to the terms of any other loan or loan document you have with RAF; 4) any other creditor of yours attempts to collect the debt you owe them through court proceedings; 5) you die; 6) you file bankruptcy; 7) you do or fail to do something which causes RAF to reasonably believe you will not be able to satisfy your obligations you owe to RAF.

**Collection of Costs:** You agree that you will be liable to RAF for any costs incurred by RAF in perfecting its secured position in the event that this Agreement is secured with any collateral. You authorize RAF to advance sufficient funds under this Agreement to pay all costs incurred by RAF in perfecting its security position. To the extent not prohibited by law you also agree that you will pay all costs of collections, whether secured or not, including reasonable attorney fees, together with interest at the default rate if you do not timely pay your obligations to RAF.

**Annual Fee:** There are no annual fees to have this Agreement.

**Applicable Law:** This Agreement shall be governed by the laws of the State of Iowa.

**Remedies:** If you are in default of this Agreement, you understand that RAF has any and all of the following remedies: 1) RAF may demand immediate payment in full of all that you owe RAF under this Agreement; 2) RAF may setoff against any rights you have to payment from RAF; 3) RAF may demand additional security or additional parties to be obligated to pay your obligations in exchange for not immediately using any of the other remedies in this paragraph; 4) RAF may refuse to make any additional Advances under this Agreement; 5) RAF may seek any collection efforts of any collateral that may exist under any agreement between RAF and you; or 6) RAF may use any other remedy available under any appropriate state or federal law. By selecting one or more of these remedies, RAF does not give up its right to use any other remedies. If RAF, in its sole discretion, waives its right to exercise any remedy upon the event of default, RAF does not waive its right to later exercise any remedies based upon such default.

**Waiver:** By execution of this Agreement you agree you will not require RAF to: 1) demand payment of the amounts due (presentment); 2) obtain official certification of non- payment (protest); 3) give notice that the amounts due have not been paid (notice of dishonor); 4) give notice of intention to accelerate; or 5) give notice of acceleration. You also give up any rights you may have under any valuation or appraisal laws, which may apply to you.

**Consent to Jurisdiction:** You agree that the acceptance and approval of the Agreement occurred in Cedar Falls, Iowa and that performance of this Agreement by you involves payment to RAF in Cedar Falls, Iowa. You knowingly and voluntarily consent to be subject to the jurisdiction in the State of Iowa for purposes of adjudicating any rights and liabilities of the parties pursuant to this Agreement, with venue to be in the Iowa District Court for Black Hawk County, Iowa, or the United States Federal District Court for the Northern District of Iowa.

**Telephone Monitoring and Recording:** RAF may monitor and record your telephone calls with RAF to assure the quality of RAF's service.

**Cancelling the Account Agreement:** You may cancel this Agreement at any time by notifying RAF in writing. In the event you cancel the Agreement, you remain responsible to pay the principal balance, interest, costs and fees according to the terms of the Agreement.

**Assignment:** RAF reserves the right to assign any or all of RAF's rights and obligations under this Agreement to a third party. You shall not assign any or all of your rights and obligations under this Agreement without the written permission of RAF.

**Unauthorized Use of the Agreement:** If you believe there has been any unauthorized use or charges to your Agreement, you must notify RAF immediately by calling (888) 395-8505 or any subsequent telephone number as may be shown on the Billing Statement. RAF may require you to provide certain information in writing to help RAF determine what happened, and to comply with such procedures as RAF may require for RAF's investigation.

**Facsimiles:** In the event that any signature is delivered by facsimile (fax) transmission or by e-mail delivery of a ".pdf" format data file, such signature shall be considered a binding signature and shall have the same force and effect as an original signature. You will ensure that all documents bearing the original signature will be forwarded to RAF as soon as possible after being faxed or emailed via "pdf", but failure to provide such documents with original signatures shall not affect the ability of either party to rely on fax signatures to the same extent as an original.

**Disclosure of Information:** RAF may use the above information and other personal information collected or compiled by RAF in connection with this Agreement (including account status and payment history) (collectively the "Information") to share with third-party partners and program sponsors in determining whether to extend credit. RAF may from time to time share and/or exchange information with those involved in your commercial transaction(s) including Manufacturers, Dealers, and third party partners as well as RAF's affiliates and/or agents for the purposes of including, but not limited to, opening, administering, servicing, transacting on and enforcing your commercial transactions, your agreements, collecting amounts owing to RAF or its assignees, verifying and evaluating your current and ongoing creditworthiness and financial status, responding to your inquiries and otherwise communicating with you regarding your account(s), including contacting you regarding extensions or renewals of this Agreement. **Privacy:** You acknowledge to be bound by and consent to RAF's most recent Privacy Statement as it appears on the website www.Raboag.com/security-privacy/privacy-statement-157. If you are unable to access the website, you may call RAF at (888) 395-8505 to obtain a copy of the documentation.

**Representations and Warranties:** You represent and warrant that all information you provided in the Agreement is true and correct. You acknowledge all information contained in the Agreement is material and serves as the basis for RAF making a credit decision on the Agreement. You further represent and warrant that the extension of credit evidenced by this Agreement is for business, commercial or agricultural purposes and is not for consumer purposes. Your submission of any report, record or other information pertaining to you or any of your subsidiaries conditions or operations, financial or otherwise, from time to time, whether or not required under the terms of this instrument, will be deemed to be accompanied by a representation by you that such report, record or information is complete and accurate in all material respects as to your or any of your subsidiaries (and, if applicable, any of your subsidiaries' partners, shareholders, members, or other principals) conditions or operations, as of the

date of such submission, including, without limitation, all material contingent liabilities, conditions or operations.

**Notice to Missouri Applicants:** Oral or unexecuted agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the Agreement. To protect the applicant(s) under this Agreement and RAF from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this Agreement and the Security Documents which are the complete and exclusive statements of the agreement between us, except as we may later agree in writing to modify such documents.

**Michigan Business Purposes Affidavit:** If you are a resident of Michigan or if your primary business address is in Michigan, by signing below you hereby certify that you are engaged in the business of commercial farming and that all products purchased on credit or other loan proceeds otherwise made available to you under this Agreement will be used exclusively for commercial agricultural purposes. This declaration is made under penalty of perjury.

**Affirmations:** By Signing below, you agree to the following:

**1)** You certify that the Agreement is submitted on your behalf for the purpose of procuring, establishing and maintaining credit from time to time with RAF and that all information provided in the Agreement is true and accurate as of this date, including but not limited to your physical address, date of birth and social security number.

**2)** You have carefully read the information contained within the Agreement and warrant it to be complete, true and accurate as of the dates set forth below and that RAF and its affiliates may continue to rely upon the Agreement continuing to be true and correct unless and until a written notice of change is given by you. In conjunction with the submission of your Agreement, you authorize RAF to obtain a credit bureau report from any credit reporting agency and to request confirmation of financial or other information of any kind whatsoever from any third party having dealings with you.

**3)** You have read, understand and agree to the terms of this Agreement consisting of four pages. You agree to the terms and conditions of this Agreement as written by RAF without any changes by you. Any changes you make to this Agreement without the written consent of RAF shall be null and void. You have retained a signed copy of this Agreement.

**4)** You agree that there is and shall be no oral commitment to extend credit to you and that a written commitment signed by RAF, when and if the Agreement is approved, shall constitute the only form of commitment by RAF. RAF shall have no liability to you or others in the event your Agreement is denied. If a loan shall be offered to, and accepted by, you differing as to amount, plan, rate, term or in any other respect from that hereinbefore negotiated, this Agreement shall nevertheless constitute your application for the loan actually accepted by you.

**5)** Your obligations as the applicant and a borrower and any co-borrower shall be joint and several. Each and every individual and entity signing below shall be held to be an applicant and a borrower.

**6)** If you are a partnership, corporation or other entity and you are signing on behalf of such entity, you hereby warrant and certify that you have been duly appointed and authorized by the entity to act on its behalf with respect to this Agreement and the credit and financing applied for, and you are so authorized to transact such business on behalf of the partnership, corporation or other entity as of the date hereof. You further agree to notify RAF immediately of any ownership changes of any entity listed on this Agreement.

**7)** You agree that RAF may notify any Dealer in the event your Agreement is approved or denied and RAF may advise the Dealer as to the credit limit and amount of credit remaining available on your Agreement.

**8)** You authorize any third party to release to RAF and for RAF to obtain written or oral credit information from any source whatsoever, including, but not limited to, credit reporting agencies and any governmental agency, even if such information would otherwise be protected under any financial privacy acts.

**9)** You affirm that you are now, and will remain throughout the term of this agreement, in compliance with all state and federal laws.

**USA PATRIOT Act – Customer Identification Program** – Enacted to help the government fight the funding of terrorism and money laundering activities. Federal law requires all financial institutions to obtain, verify and record information that identifies each person who applies for a loan. When you apply for a loan we will ask you for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**1 Endorsement Box 1**

Amount Requested*: 25,000

Finance Program / Brand of Products*: Beck's

[signature] 2-8-23

Applicant / Borrower Signature* Date*

*An Individual is Required on all applications*

**2 Endorsement Box 2** *Required if applying with another Individual*

Co-Applicant / Co-Borrower Signature* Date*

**3 Endorsement Box 3** *Required if applying with an entity*

Entity Co-Applicant / Co-Borrower:

Entity Legal Name (as shown on formation documents & page 1 of the application)*

Authorized Representative Signature* Title*

Date*

* Required field, if applicable per page 1

- *All ENTITIES:* ***Please Complete Certification of Beneficial Owners Addendum***

- *All PARTNERSHIPS:* ***Please also provide a copy of the most recent Tax Form 1065 (first page only)***

ORIGINAL